UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
UNITED STATES OF AMERICA,                   )
                                            )
        v.                                  )        Criminal No. 15-0025 (PLF)
                                            )
CHRISTOPHER FORD, et. al.                   )
                                            )
        Defendants.                         )
_____)


<u>OPINION</u>


        This matter is before the Court on the motions of defendants Rashard Grant,

Christopher Ford, and Theodore Sanders to sever their trials from the trials of their co-

defendants.  Defendants Anthony Hager, Andre Leach, and Rashard Grant adopt one or more of

the motions.  The government opposes the motions.  Upon consideration of the parties' written

submissions, the oral argument at the pretrial motions hearing held on December 11 and 16,

2015, the relevant case law, and the entire record in this case, the Court will deny the motions.[1]


I.  BACKGROUND

        The grand jury returned an indictment charging all seven defendants with one

count of participating in a conspiracy to distribute phencyclidine ("PCP"), in violation of 21

---

[1]        Relevant papers reviewed by the Court include:  Superseding Indictment [Dkt. 40]; Government's Bill of Particulars [Dkt. 75]; Defendant Grant's Motion for Severance ("Grant Mot.") [Dkt. 116]; Defendant Ford's Motion to Sever Defendants ("Ford Mot.") [Dkt. 120]; Defendant Sanders' Motion to Sever Defendants ("Sanders Mot.") [Dkt. 126]; Government's Omnibus Opposition to Defendants' Motions ("Opp.") [Dkt. 137]; Defendant Grant's Motion to Adopt [Dkt. 145]; Defendant Ford's Reply to Government's Omnibus Opposition to Defendants' Motion to Sever Defendants ("Ford Reply") [Dkt. 155]; Defendant Hager's Motion to Joint [sic] and Adopt Motions [Dkt. 158]; Defendant Sanders Motion to Adopt [Dkt. 159]; Defendant Leach's Motion to Join and Adopt [Dkt. 165]; and Transcript of December 11, 2015 Motions Hearing ("12/11/15 Tr.") [Dkt. 181].

U.S.C. § 846.  Superseding Indictment at 1-4.  The superseding indictment also charges

Simmons, Fenwick, and Leach with one or more counts of possession with intent to distribute

PCP ("PWID PCP"), in violation of 21 U.S.C. § 841(a)(1); charges Simmons and Fenwick with

one count each of using a firearm in furtherance of a drug trafficking crime, in violation of 18

U.S.C. § 924(c)(1); and charges Simmons with one count of felon in possession of a firearm, in

violation of 18 U.S.C. § 922(g)(1).  Superseding Indictment at 4-6.

Grant argues that the indictment improperly joins him with his co-defendants

under Rule 8 of the Federal Rules of Criminal Procedure because (1) the government fails to

allege that he participated in the "same act or transactions" as his co-defendants, Grant Mot. at

2-3 (quoting FED. R. CRIM. P. 8(b)), and (2) no evidence against Grant's co-defendants is

"mutually admissible" against him.  Id. at 4-5.

Several defendants raise arguments that severance is necessary to safeguard their

trial rights.  First, Ford argues that severing his trial is necessary to preserve his right to present a

defense because he needs the testimony of his co-defendant Simmons.  Ford Mot. at 4.  Ford

quotes an unofficial transcript from the Court's status conference of May 4, 2015, at which

Simmons made a statement in open court that he "never bought PCP from Mr. Ford," only

marijuana.  Id.  Ford argues that Simmons's statement establishes a prima facie case for

severance under the D.C. Circuit's test set forth in United States v. Ford, 870 F.2d 729 (D.C. Cir.

1989).  Second, Grant argues that his Sixth Amendment right to confrontation will be violated

when the government introduces "codefendant . . . statements over the phone which indirectly

implicate" him.  Grant Mot. at 7.  Grant contends that the government's use of any statements

inculpatory of him made by his co-defendants during wiretapped conversations violates Bruton

v. United States, 391 U.S. 123 (1968).  Grant Mot. at 7-8.  Third, Sanders, Grant, and Hager

contend (for the first time at the December 11, 2015 motions hearing) that a joint trial would violate their Sixth Amendment constitutional right to a speedy trial because they are ready to proceed to trial more quickly than the schedules of their co-defendants' attorneys permit. 12/11/15 Tr. at 174-75, 178-79, 182.

Finally, Grant, Ford, and Sanders all argue that allowing the jury to hear the evidence against the other defendants at a joint trial will create spillover prejudice "by imputing to [them] guilt based on the activity of the other" defendants.  Sanders Mot. at 3; see also Grant Mot. at 2, 5; Ford Mot. at 3.  They state that Rule 14 of the Federal Rules of Criminal Procedure requires severance of each of their trials from that of their co-defendants because the evidence against them individually is de minimis, see Ford Mot. at 3, while the evidence against their co-defendants is substantial.  See Grant Mot. at 1-2, 5; Ford Mot. at 3-4; Sanders Mot. at 3-4.[2]  As support, Grant claims that only 10 of the 624 overt acts listed in the Bill of Particulars involve him, Grant Mot. at 1-2; Sanders claims that he appears on only 11 of the several thousand conversations that the government recorded during sixty days of wiretapping Simmons's phone, Sanders Mot. at 1; and Ford claims that "there is not one call between Simmons and [himself] that discusses 'PCP' per se or any other evidence of [him] actually meeting and providing PCP to Simmons."  Ford Reply at 2.

The government responds to defendant's arguments by detailing its evidence that Grant, Ford, Sanders, and Hager are all a part of the same conspiracy to distribute PCP.  Opp. at 16-33.  With respect to Grant, Sanders, and Hager, the government cites multiple wiretap conversations where they discuss PCP distribution and their efforts to move firearms for

---

[2]      Grant, Hager, and Leach adopt Sanders's motion, see Dkt. 145, 158, & 165, while Grant and Sanders adopt Ford's motion.  See Dkt. 145 & 159.  Leach's motion is moot because he now has entered a plea of guilty.  See United States v. Ramirez, 54 F. Supp. 2d 25, 27 (D.D.C. 1999) (motions filed by defendants who "entered guilty pleas . . . therefore became moot").

Simmons.  Id. at 17-18, 20-23.  The government alleges that law enforcement corroborated these conversations when it executed a search warrant at Simmons's residence and discovered a firearm in a lunch bag, the exact location discussed on the wiretap.  Id. at 21-22.  With respect to Ford, the government cites 18 wiretapped conversations between Simmons and Ford discussing PCP distribution and details the contents of several such conversations.  Id. at 16-19.  The government alleges that law enforcement corroborated these conversations by "actually observ[ing]" Ford and Simmons meet "[o]n numerous occasions."  Id. at 17.

On these facts, the government contends that the defendants are properly joined in the same indictment under Rule 8(b) because "the government expects essentially the same evidence to be presented" against each defendant.  Opp. at 24.  It also argues that defendants have failed to demonstrate any "compelling" spillover prejudice that would meet their "heavy burden" to show that severance is appropriate in a conspiracy case.  Id. at 25-27.  Finally, the government takes the position that proper jury instructions would cure any potential spillover prejudice.  Id. at. 26-27.

With respect to Ford's asserted need for Simmons's testimony in order to present his defense, the government responds that Simmons's testimony "would be incredible" and of "insignificant probative value" based on other contradictory wiretap evidence.  Id. at 28-29.  The government also states that Simmons "retains a Fifth Amendment [privilege] not to testify" at Ford's trial even if the Court severed Ford and scheduled Ford's trial first.  Id. at 29.

Following full briefing on the motions to sever, the Court inquired of Simmons at the December 16, 2015 motions hearing whether it is his intention to testify at Ford's trial if Ford were tried first and he were tried later, keeping in mind that if there were a joint trial he could choose to testify or not.  Simmons answered "yes," indicating that he would testify even though

everything he said at Ford's trial could be used against him at his later trial. The Court also asked Simmons if he would testify at a joint trial where he, Ford, and the other co-defendants were tried together, and Simmons answered "yes."

## II.  DISCUSSION

Defendants raise five bases for severance:  (1) misjoinder under Rule 8(b); (2) Ford's asserted need for Simmons's testimony; (3) Sixth Amendment Confrontation Clause issues stemming from Grant's inability to cross-examine non-testifying co-defendants; (4) Sixth Amendment right to a speedy trial; and (5) spillover prejudice.

### 1.  Misjoinder Under Rule 8(b)

Rule 8(b) of the Federal Rules of Criminal Procedure states that "[t]he indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  "A 'series of acts or transactions' is 'two or more acts or transactions connected together or constituting parts of a common scheme or plan.'"  United States v. Bostick, 791 F.3d 127, 145 (D.C. Cir. 2015) (quoting United States v. Moore, 651 F.3d 30, 69 (D.C. Cir. 2011)). "The Government . . . 'need merely allege, not prove, the facts necessary to sustain joinder.'"  Id. (quoting United States v. Gooch, 665 F.3d 1318, 1334 (D.C. Cir. 2012)).

Rule 8 "has generally been construed liberally in favor of joinder," United States v. Richardson, 161 F.3d 728, 733 (D.C. Cir. 1998), because "'[j]oint trials play a vital role in the criminal justice system,' promoting efficiency and avoiding the 'scandal and inequity of inconsistent verdicts.'"  United States v. Straker, 800 F.3d 570, 626 (D.C. Cir. 2015) (quoting Zafiro v. United States, 506 U.S. 534, 537 (1993)).  "[J]oinder is preferred in conspiracy cases

because the conspiracy charge provides a common thread that ties all of the defendants and charges together."  United States v. Suggs, 531 F. Supp. 2d 13, 25 (D.D.C. 2008) (internal quotation marks omitted), aff'd sub nom. United States v. Glover, 681 F.3d 411 (D.C. Cir. 2012).

      In this case, Grant's misjoinder argument fails because the Court already has found, in denying Ford's motion to dismiss, that the superseding indictment does not charge multiple conspiracies; it alleges a common scheme or plan to distribute PCP in and around the Savannah Terrace area of Southeast Washington, D.C.  Joinder of the defendants in a single conspiracy trial therefore is proper under Rule 8(b).  See United States v. Bostick, 791 F.3d at 145.  The Bill of Particulars makes clear that each of the defendants, including Grant, are inextricably "tie[d]" to Simmons, see United States v. Suggs, 531 F. Supp. 2d at 25, because Simmons spoke with or texted each of them about, inter alia, purchasing, diluting, and distributing PCP.  Bill of Particulars ¶¶ 8-624.  Furthermore, minor differences among alleged co-conspirators do not transform a single conspiracy into multiple conspiracies.  United States v. Tarantino, 846 F.2d 1384, 1393 (D.C. Cir. 1988) ("A single conspiracy conviction has been upheld [] despite a lack of significant overlap of some participants when strong evidence established that a main player coordinated the narcotics importation and distribution enterprise." (internal quotation marks omitted)).  The Court finds that all of the defendants are properly joined in the same indictment under Rule 8(b) and therefore will deny Grant's motion for severance on the basis of misjoinder.

### 2.  Ford's Asserted Need for Simmons's Testimony

      Once multiple defendants are properly joined in the same indictment under Rule 8(b), "[d]istrict courts should grant severance" under Rule 14 "sparingly because of the 'strong interests favoring joint trials, particularly the desire to conserve the time of courts, prosecutors,

witnesses, and jurors.'" United States v. Celis, 608 F.3d 818, 844 (D.C. Cir. 2010) (quoting United States v. Mardian, 546 F.2d 973, 979 (D.C. Cir. 1976) (en banc)). Rule 14 severance is warranted where joinder "appears to prejudice a defendant," FED. R. CIV. P. 14(a), such as when there is "serious risk that a joint trial would" either (1) "compromise a specific trial right of one of the defendants," or (2) cause prejudicial spillover, i.e., "prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. at 539. Ford's asserted need for Simmons's testimony falls into the first category.

 Defendants who argue that a joint trial would compromise their right to present a defense because they assert a need for a co-defendant's testimony must make a four-part showing in order to establish a prima facie case for severance: "(1) a bona fide need for the testimony; (2) the substance of the testimony; (3) the exculpatory nature and effect of the testimony; and (4) the likelihood that the co-defendant will testify if the cases are severed." United States v. Ford, 870 F.2d at 731. "A failure to demonstrate any one of these elements is dispositive." United States v. Washington, 12 F.3d 1128, 1133 (D.C. Cir. 1994). "Once the movant makes that threshold showing, the trial court must then: (1) examine the significance of the testimony in relation to the defendant's theory of the case; (2) assess the extent of prejudice caused by the absence of the testimony; (3) consider the effects on judicial administration and economy; and (4) give weight to the timeliness of the motion." United States v. Ford, 870 F.2d at 731 (internal citations omitted). "In this balancing analysis, the court also considers 'the extent to which proffered exculpatory testimony could be impeached.'" United States v. Kayode, 254 F.3d 204, 210-11 (D.C. Cir. 2001) (quoting United States v. Ford, 870 F.2d at 732-33).

In this case, Simmons's "yes" answer indicating a desire to testify in Ford's defense and his more detailed statement about the content of that testimony together satisfy each of the four prongs of <u>United States v. Ford</u> necessary for Ford to make the <u>prima facie</u> case in favor of severing his trial from Simmons's trial.  Ford needs Simmons's statement that Simmons only bought marijuana and not PCP from Ford because Ford has identified no other witness who can substantiate that claim.  Although Simmons's more detailed statement at the May 4, 2015 status hearing and "yes" answer at the December 16, 2015 motions hearing were unsworn, the substance and exculpatory value of Simmons's potential testimony for Ford are plain.  At the motions hearing, Simmons reiterated his strong desire to testify at Ford's trial, even if Ford's trial preceded his own.  Simmons answered "yes" when the Court asked if he would be willing to waive his Fifth Amendment privilege in order to testify on Ford's behalf.  Ford therefore has made the <u>prima facie</u> case for severance under <u>United States v. Ford</u>.

The balancing analysis applicable after Ford has made the <u>prima facie</u> showing for severance, however, suggests that severing his trial is unnecessary to preserve his rights. Factors one and four—the significance of the testimony to Ford's defense and the timeliness of his motion—cut in Ford's favor.  Ford's motion is timely and Simmons's testimony is significant because Ford may choose to defend against the conspiracy charge on the theory that the code words that he used during the wiretapped conversations refer to marijuana and not PCP. Simmons's testimony undoubtedly would support that theory.  There is no prejudice to Ford if the Court denies his severance motion, however, because Simmons stated in open court that he plans to testify even at a joint trial.  Assuming that Simmons will in fact testify at a joint trial, Ford offers no persuasive argument why severance is required in order to protect his rights.  Ford

does not suggest that Simmons's testimony would be different at a joint trial or any other reason why Simmons's testimony would be more advantageous to him at a separate trial.

The government points out that, despite Simmons's statement expressing a desire to testify, the Court cannot assume that Simmons actually will testify either at Ford's severed trial or at a joint trial.  Simmons may choose not to testify at any time prior to his testimony and there is no way that either Ford or the Court can compel his testimony; only the government has the power to immunize Simmons and avoid his invoking his Fifth Amendment privilege against self-incrimination.  See United States v. Moore, 651 F.3d at 82 (holding that district courts have "no authority to immunize . . . or to compel the government to immunize"; "[t]he decision to grant immunity from prosecution rests solely with the Executive Branch"); United States v. Heldt, 668 F.2d 1238, 1282 (D.C. Cir. 1981) ("[A] trial court has no authority, in the absence of a request by the government, to provide use immunity for a defense witness.").  And the government has made clear that it has no intention of offering Simmons any form of immunity.

The concern that Simmons may change his mind and invoke his Fifth Amendment privilege when called to testify in Ford's defense is equally present at joint and separate trials, as is the likelihood that he will in fact testify as he has said he would.  On balance, a joint trial in this case would have the substantial benefits of judicial economy and consistent verdicts without sacrificing Ford's ability to present a defense.  The Court therefore will deny Ford's motion to sever on the basis of his asserted need for Simmons's testimony.

### 3. Sixth Amendment Confrontation Clause Issues

Grant argues that a joint trial will compromise his Sixth Amendment Confrontation Clause right when the government introduces the statements of his co-defendants on wiretap interceptions.  Grant Mot. at 7-8.  The Confrontation Clause of the United States

9

Constitution provides the accused with "the right ... to be confronted with the witnesses against him." U.S. CONST. Amend. VI.  The Supreme Court in <u>Bruton</u> held that "the Confrontation Clause forbids the prosecution to introduce a nontestifying codefendant's confession implicating the defendant in the crime."  <u>See</u> <u>Greene v. Fisher</u>, 132 S. Ct. 38, 42-43 (2011).  The government's proffer of a co-defendant's statement that implicates <u>Bruton</u>, however, "does not automatically require severance."  <u>United States v. Brodie</u>, 326 F. Supp. 2d 83, 95 (D.D.C. 2004).  <u>Bruton</u> applies only when a co-defendant's statement "expressly implicates the defendant" and is "so incriminating that it constitutes an exception to the general proposition that a judge's limiting instruction will prevent any improper use of the statement by the jury."  <u>United States v. Washington</u>, 952 F.2d 1402, 1404–05 (D.C. Cir. 1991) (internal quotation marks omitted).  Otherwise, <u>Bruton</u> is satisfied when the co-defendant's statement is "redacted to eliminate not only the defendant's name, but any reference to his or her existence," <u>Richardson v. Marsh</u>, 481 U.S. 200, 211 (1987), that is, to eliminate an "obvious pointer" to the specific defendant's identity.  <u>See</u> <u>United States v. Brodie</u>, 326 F. Supp. 2d at 95-96 (discussing the type of redactions that are needed for the government to comply with <u>Bruton</u>).  Furthermore, in a conspiracy prosecution, "[s]tatements satisfying the coconspirator non-hearsay rule under Federal Rule of Evidence 801(d)(2)(E) may be admitted against co-defendants without violating the Confrontation Clause."  <u>United States v. Carson</u>, 455 F.3d 336, 365 (D.C. Cir. 2006).

Here, Grant fails to identify any co-defendant statement that falls within the ambit of <u>Bruton</u> in the 624 paragraphs of the Bill of Particulars.  Grant Mot. at 7-8.  The government avers that it "is not aware" of any such statements with respect to Grant, and the Court finds none.  Opp. at 31.  But if Grant is correct that statements on the wiretap interceptions implicate <u>Bruton</u>, either:  (1) they are co-conspirator statements in furtherance of the conspiracy, the

admission of which would not violate the Sixth Amendment's Confrontation Clause, see United
States v. Carson, 455 F.3d at 365; or (2) they are not such statements, in which case the Court
will work with the parties to tailor appropriate redactions to co-defendant statements that will
resolve any potential Bruton issues that may arise in the course of trial.  See United States v.
Brodie, 326 F. Supp. 2d at 95-96.  Grant's motion to sever on the basis of the Sixth Amendment
Confrontation Clause therefore is denied.

### 4.  Sixth Amendment Right to a Speedy Trial

Sanders, Grant, and Hager argue that severance is necessary to preserve their
Sixth Amendment constitutional right to a speedy trial.  While defendants never explicitly state
whether they are asserting their constitutional or statutory right to a speedy trial, their argument
is necessarily based upon their Sixth Amendment constitutional right to a speedy trial, see
Klopfer v. North Carolina, 386 U.S. 213, 222 (1967), because the clock for calculating their
statutory right to a speedy trial under the Speedy Trial Act has yet to run.  And it "will be an
unusual case in which the [Speedy Trial] Act is followed but the Constitution violated."  United
States v. Rice, 746 F.3d 1074, 1081 (D.C. Cir. 2014).

"[I]n assessing whether the Sixth Amendment has been violated, [courts] consider
the '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and
prejudice to the defendant.'"  United States v. Rice, 746 F.3d at 1081 (quoting Barker v. Wingo,
407 U.S. 514, 530 (1972)).  With respect to the first factor here, law enforcement arrested Grant
in March 2015, see Dkt. 6, Hager in May 2015, see Dkt. 49, and Sanders in August 2015.  See
Dkt. 81.  The Supreme Court has held that "postaccusation delay [is] presumptively prejudicial at
least as it approaches one year."  See Doggett v. United States, 505 U.S. 647, 652 n.1 (1992)
(internal quotation marks omitted).  The length of the delay for Grant is thus "long enough to

trigger <u>Barker</u> analysis," but it is not with respect to Sanders or Grant.  <u>See</u> <u>United States v. Rice</u>, 746 F.3d at 1081.  The Court therefore concludes that Sanders's seven-month delay and Hager's nine-month delay do not violate the Sixth Amendment right to a speedy trial.  Trial is scheduled to begin on June 27, 2016, so it may be that Hager could renew his Sixth Amendment constitutional speedy trial claim in a few months.

Even Grant's eleven-month delay "remains shorter than others [the D.C. Circuit has] upheld against challenge."  <u>See</u> <u>United States v. Rice</u>, 746 F.3d at 1081 (citing <u>United States v. Lopesierra-Gutierrez</u>, 708 F.3d 193, 202-03 (D.C. Cir. 2013) (approving of a three-and-a-half-year delay)).  And, as the Supreme Court recognized in <u>Barker</u>, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." 407 U.S. at 531.  While the Court recognizes that Grant's eleven-month delay may be "presumptively prejudicial," it cannot say that it is "uncommonly long" for a seven-defendant conspiracy prosecution, <u>see</u> <u>Doggett v. United States</u>, 505 U.S. at 651, and therefore proceeds with skepticism to the remaining <u>Barker</u> factors.

The second factor, which asks "whether the government or [Grant] is more to blame for [the] delay," <u>Doggett v. United States</u>, 505 U.S. at 651, cuts against Grant.  Grant asked for an extension of time to file pretrial motions, <u>see</u> Dkt. 112, and did not file such motions until October 2015.  <u>See</u> <u>e.g.</u>, Grant Mot.  Only four months have elapsed from October 2015 to the present day, and that delay is attributable only to the Court's resolution of Grant's (and his co-defendants') pretrial motions; it "cannot be blamed on [] the government."  <u>See</u> <u>United States v. Rice</u>, 746 F.3d at 1082.  The third factor, Grant's assertion of his right to a speedy trial, is a wash because, although he has consistently asserted his interest in a speedy trial, he did not connect that interest to his severance argument until the motions hearing on December 11, 2015,

and, as noted earlier, he did not make clear whether he was basing his argument on his

constitutional or statutory right to a speedy trial.  See 12/11/15 Tr. at 178-79.  The fourth factor,

prejudice to Grant, cuts against him because he has not articulated any claim of prejudice based

on the delay.  Id.  The Barker factors demonstrate that the delay at this time has not violated the

Sixth Amendment right to a speedy trial of Sanders, Grant, or Hager.  The Court therefore will

deny their motions to sever on that basis.

*5.  Spillover Prejudice*

   "Severance is not required [] 'when there is substantial and independent evidence

of each defendant's significant involvement in the conspiracy.'"  See United States v. Straker,

800 F.3d at 626 (quoting United States v. Moore, 651 F.3d at 96); see also United States v.

Bruner, 657 F.2d 1278, 1290 (D.C. Cir. 1981) (noting severance in conspiracy cases is only

"required" when the government's evidence against the non-moving defendants is "'far more

damaging than the evidence against the moving party'" (quoting United States v. Mardian, 546

F.2d at 977)).  "Absent a dramatic disparity of evidence" against different members of the

charged conspiracy, "any prejudice caused by joinder is best dealt with by instructions to the jury

to give individual consideration to each defendant."  United States v. Straker, 800 F.3d at 626

(quoting United States v. Slade, 627 F.2d 293, 309-10 (D.C. Cir. 1980)).

   In this case, there is not a dramatic disparity in the evidence because the

government has proffered substantial and independent evidence of each defendant's involvement

in the conspiracy.  Although some defendants are alleged to have committed fewer crimes (no

gun or PWID charges, for example) or participated less extensively or played different roles in

the charged conspiracy, "the disparity of evidence [does] not rise to a level necessary to mandate

severance."  See United States v. Moore, 651 F.3d at 96.  The Court's review of the 624 overt

acts in the Bill of Particulars for the names of all seven defendants reveals that it mentions each defendant having participated in at least ten separate overt acts.  See Bill of Particulars ¶¶ 1-624. "There is also less risk of spillover prejudice where, as here, the government presents wiretap evidence so that the jury can examine each individual defendant's words separately in order to convict."  United States v. Eiland, 738 F.3d 338, 359 (D.C. Cir. 2013).  Given this amount of evidence against each defendant, the Court is confident that a jury instruction, which explains that each defendant's guilt must be considered individually based upon the evidence that pertained to him, will cure any potential spillover prejudice.  The Court therefore will deny Grant, Ford, and Sanders's motions to sever on the basis of spillover prejudice.

### III.  CONCLUSION

The Court denies defendants' motions to sever their trials from the trials of their co-defendants.  An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

/s/
_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  February 22, 2016